UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


**NARASIMHACHARI RAGHAVAN,**
    **- Plaintiff**


    **v.**                                        **CIVIL NO. 3:05-CV-682(CFD)**


**BAYER USA, INC AND
BAYER CORPORATION,**
    **- Defendants**


**RULING AND ORDER ON
PLAINTIFF'S MOTION TO COMPEL AND
PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

This is an Employee Retirement Income Security Act (ERISA) case brought by the plaintiff against his former employer. The plaintiff alleges he was terminated shortly before he became eligible for an early retirement benefit under Bayer's corporate pension plan. He claims that his termination was motivated by a desire to prevent him from receiving certain retirement benefits in violation of § 510 of ERISA. 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan.").

Presently before the court are two discovery motions,

plaintiff's motion to compel (Dkt. # 39) and plaintiff's motion for protective order (Dkt. # 42).

## I. BACKGROUND

Mr. Raghavan worked for Bayer at its Tarrytown, New York office for nine years and nine months between August 1993 and April 2003. The plaintiff asserts that Bayer offered an early retirement benefit that was available to employees who were at least fifty-five years of age and had accumulated over ten years of service with Bayer. He claims that the defendant terminated him so that he would not be eligible for the early retirement benefit. The plaintiff also asserts that one of his supervisors, Joseph Cassetta, has made statements indicating that the plaintiff was singled out for termination.

The plaintiff represents that as part of his termination he was offered a severance package. Under the severance package he was paid his regular salary for several months after his termination. He states that other employees, similarly situated, were allowed to add this severance period to their time worked, thus making them eligible for the early retirement benefit. He refers to this option to "tack on" the severance period to an employee's years of service calculation as a "Severance Incentive Plan."[1] Mr. Raghavan claims that he was singled out and not

---

[1] At times Bayer refers to this benefit as an "enhanced service credit." (Def's Mem. in Opp'n at 6.)

-2-

offered this Severance Incentive Plan. As a result, according to the plaintiff, he did not receive credit for ten years of service with Bayer and did not receive the early retirement benefit.

The defendants' chief defense is the existence of a release that Bayer claims Mr. Raghavan assented to when he accepted the severance package. They also argue, however, that Mr. Raghavan was not entitled to the Severance Incentive Plan he cites because he was not in the category of employee targeted by the program. Bayer represents that those employees located at the Tarrytown office who were offered the Severance Incentive Plan were all members of the New York Lab Test Segment ("LTS") which did not include Mr. Raghavan, who worked in the diagnostics division. Bayer also asserts that any other employees that were permitted to "tack on" their severance period towards the calculation of their early retirement benefit were not based in the Tarrytown office and were not similarly situated employees as required under ERISA.

## II. **MOTION TO COMPEL**

The plaintiff challenges the defendants' responses to interrogatories 6-10 and requests for production 1-13.[2] The plaintiff summarizes the contested discovery requests as follows.

> All of the information sought by the Plaintiff falls into the following topics: (1) was the Plaintiff treated

---

[2] The court will not reproduce the disputed interrogatories and requests for production herein. They are reproduced in plaintiff's memorandum in support at pages 6-9. (Dkt. #40.)

> differently than other similarly situated employee[s] or, stated differently, were other employees given special treatment [interrogatories 6-10]; (2) did the Defendants offer voluntary separation incentives to other employees [requests for production 1-10 & 13], and (3) is there direct evidence of animus on the part of the Defendants' supervisory employees toward the Plaintiff [personnel file of the plaintiff's supervisor Mr. Cassetta].

(Pl's Mem. in Supp. at 5.)

**A.   Interrogatories 6-10**

With regard to interrogatories 6-10, the discovery dispute here focuses on whether the plaintiff is entitled to information about employees at Bayer offices other than the Tarrytown office where he was employed.  Specifically, the disputed interrogatories seek detailed information regarding the circumstances of departure for any person who either retired from or was terminated by Bayer between January 1, 2000 and December 31, 2003 and who had accumulated over nine years, but less than ten years of experience with the company.  (See Pl's Mem. in Supp. at 6 n.3.)  The defendant represents that it has complied with the interrogatories in so far as they relate to employees at the Tarrytown facility within the plaintiff's work division.  (Defs' Mem. in Opp'n at 4.) They argue, however, that the interrogatories are overly broad and burdensome to the extent they target information about employees at other Bayer offices.  The court finds that the defendants' responses are sufficient because the plaintiff is not entitled to discovery regarding employees at the defendants' other offices.

There is no dispute here that it is the plaintiff's burden to

prove that the desire to prevent him from obtaining his retirement benefits was Bayer's motivating factor in electing to terminate his employment and not simply an unfortunate consequence of an otherwise lawful termination. Dister v. Continental Group Inc., 859 F.2d 1108, 1111 (2d Cir. 1988). This specific intent requirement under § 510 of ERISA is borrowed from other employment discrimination jurisprudence, specifically the formula laid out by the Supreme Court in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973). See also Hayes v. Compass Group USA, Inc., 343 F. Supp. 2d 112, 121 (D. Conn. 2004) ("To determine whether [an employee's] loss of benefits was a motivating factor and not merely a consequence of his termination, the court applies the McDonell Douglas standard."); Dister, 859 F.2d at 1112 (2d Cir. 1988) (holding that the McDonell Douglas burden shifting analysis is applicable in discriminatory discharge cases brought under § 510 of ERISA).

Under the McDonnell Douglas analysis, the plaintiff is permitted to discharge his burden through the use of direct or circumstantial evidence or a combination of both. The discovery dispute here surrounds the plaintiff's desire to obtain circumstantial evidence that Bayer treated other employees differently than they treated him. The plaintiff is entitled to discover this evidence to the extent it is relevant to his claim. However, courts have placed limitations on the extent to which

employee comparison evidence is admissible as circumstantial evidence of intent to discriminate. Courts require that the evidence sought to be admitted must involve treatment of employees that are similarly situated to the plaintiff. <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 94 Civ 8494 (HB), 1999 U.S. Dist. LEXIS 16050, at *12-15 (S.D.N.Y. Oct. 19, 1999) (differences in treatment are probative only if the individuals used for comparison are similarly situated to the plaintiff in all material respects.")(internal quotations omitted); <u>Bryant v. Food Lion, Inc.</u>, 100 F. Supp. 2d 346, 370-71 (D.S.C. 2000) ("Because Section 510 [of ERISA] requires specific intent, (not mere disparate treatment) another employee must have the same supervisor as a plaintiff before that other employee could be considered a similarly situated person whose treatment would provide a valid basis for comparison. Evidence of how a different supervisor treated another employee simply is not probative of whether the plaintiff's supervisor acted with discriminatory intent."). The rationale is that if the comparison is made with an employee who has different job responsibilities or a different supervisor than the plaintiff, then it becomes difficult to identify whether those factors were material to the employment decision or whether impermissible factors were taken into account. Courts have determined that these "apples to oranges" comparisons are too likely to confuse jurors and have thus excluded their use at trial

or in the context of summary judgment.

As a matter of law, therefore, evidence of how other supervisors in other locations treated employees with different work responsibilities than the plaintiff is likely not admissible for the purposes of trial or summary judgment in this case. Although admissibility and discoverability are not the same, they are closely related, and discovery of inadmissible evidence is only appropriate where it is clear that production of that evidence could lead to the discovery of otherwise admissible evidence. Fed. R. Civ. P. 26(b)(1). Evidence relating to how Bayer treated non-similarly situated employees would not help the plaintiff find out how Bayer treated similarly situated employees and, even if it did, Bayer has already provided this information to the plaintiff.

Moreover, assuming that the evidence sought is somehow tenuously relevant to the question of whether Bayer terminated the plaintiff for a discriminatory reason, it would not be discoverable under Rule 26(b)(2)(C). That Rule states, in relevant part,

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that. . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

The factors outlined in the quoted portion of Rule 26(b)(2)(C) weigh overwhelmingly in favor of non-discovery here for several

reasons. First, the evidence sought is of little or no relevance. Relevance is questionable here not only because of the evidence's likely inadmissibility, but because the plaintiff himself has limited his claim to the Tarrytown facility. (Am. Compl. ¶17.) Thus, the principal issue in this case is whether the Severance Incentive Plan was offered to other employees at the Tarrytown facility and not the plaintiff and, if so, why? Information regarding Severance Incentive Plans offered to employees in other offices does not help answer this question.

Second, Bayer represents that it is a company with over thirty nationwide locations and over ten thousand employees. It would be incredibly burdensome and costly to require Bayer to identify every employee within a four year window who was terminated or otherwise left the company and who left with over nine years, but less than ten years service.

Third, the amount in controversy in this case is not high. Plaintiff himself estimates that he is owed no more than $58,000. (Pl's Mem. in Supp at 3.) While this is certainly no small amount for the plaintiff, with litigation costs being what they are, Bayer could easily spend a good portion of that amount in attorney's fees and costs simply finding the information the plaintiff seeks.

Finally, the importance of the proposed discovery on resolving this case is minimal. While the plaintiff may attempt to prove his case through circumstantial evidence, direct evidence is usually

better in the employment discrimination context. Here, the plaintiff believes direct evidence exists, in the form of statements made by his supervisor, Mr. Cassetta. The plaintiff's resources would be much better spent deposing Mr. Cassetta or those who may have heard these statements rather than trying to find out whether some other employee in some other office was able to tack on his severance period to his years of service, especially in light of the fact that such evidence is likely inadmissible at trial.

B. **Requests for Production 1-10 & 13**

The court also finds here, with respect to requests for production 1-10, that the defendants' responses are sufficient. The requests promulgated by the plaintiff are overbroad in two respects. First, they seek information related to employees in other offices. As already discussed, this information is not discoverable. Second, the production requests seek "all documents concerning the establishment, maintenance, modification, amendment, proposed amendment, alteration, change etc. of [certain employee benefit documents or plans adopted by Bayer. . . ."]. The court agrees with the defendants' contention that requiring the defendants to produce "virtually every scrap of paper relating to these plans generated over a 14 year period" is unduly burdensome under the circumstances. The relevant inquiry here is which plans were in effect at the time the plaintiff was terminated. What

various Bayer executives might have had to say regarding the creation of these benefit plans or during any proposed amendment process is simply not at issue. The plaintiff is entitled to the plans that are applicable to him, and the defendants represent that they have provided these documents. The court is satisfied that this is a sufficient response.

With regard to interrogatory thirteen, which seeks demographic information for all employees who retired or were terminated from Bayer between 2000 and 2005, the court finds that the defendants' responses are also sufficient. The defendants have provided the plaintiff with the age and years of service information with respect to other employees terminated by Bayer at the Tarrytown office. Other demographic information is not relevant. The plaintiff here does not allege age, race, sex or any other type of discrimination other than benefits discrimination under ERISA. Demographic information is only relevant insofar as it shows which employees at the Tarrytown office were, like the plaintiff, over the age of fifty-five and approaching ten years of service.

C. **Personnel File of Mr. Cassetta**

On what basis the plaintiff in this motion to compel seeks the personnel file of his supervisor, Mr. Cassetta, is unclear. The plaintiff has not cited any discovery request that sought this file. Moreover, the defendants represent that the plaintiff never requested the file. The court will not compel discovery that has

not been sought.  On this basis, the motion to compel with respect to the personnel file of Mr. Cassetta is denied.

### III. <u>**MOTION FOR A PROTECTIVE ORDER**</u>

The plaintiff has also moved for a protective order preventing his deposition from going forward until the defendants have fully complied with written discovery.  Under Rule 26(c) the court may enter a protective order "for good cause shown. . . ."  The only "good cause" cited by the plaintiff is the presumed persuasiveness in his arguments set forth in his motion to compel.  In other words, the plaintiff assumed the court would grant his motion to compel and, thus, additionally sought an order preventing his deposition from proceeding until the defendants complied with what he viewed as permissible discovery requests.  The court has ruled against the plaintiff with regard to his motion to compel and, therefore, no good cause exists to enter a protective order.  The plaintiff's motion is, accordingly, denied.

The court pauses simply to address the plaintiff's strenuous contention that it is somehow unfair for the defendants to question him as to what basis he has to believe he was terminated because Bayer did not want to give him the severance incentive he alleges he was owed and was given to others.  The court sees nothing unfair in this hypothetical yet probable line of questioning.  Other than simply being three months away from vesting, the plaintiff must have some reason to believe other employees at the Tarrytown office

were allowed to "tack on" their severance period to their time in service calculation and he was not. Otherwise, he would not have sought such specific discovery on that issue.[3] It may well be that the plaintiff's only basis is that he heard from co-workers that Bayer had offered them these more lucrative severance terms, or even that he heard third-hand that Bayer had made "golden handshake" offers to other Tarrytown employees. Whatever the case may be, it is fair for Bayer to ask the question. Under the circumstances, a protective order is not appropriate.

## IV.  CONCLUSION

For the reasons stated herein, the plaintiff's motion to compel **(Dkt. #39)** and his motion for a protective order **(Dkt. #42)** are both **DENIED** in all respects. The plaintiff is **ORDERED** to make himself available for a deposition within thirty days hereof.

This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. See 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days

---

[3] As stated above in the Court's discussion of the motion to compel, the plaintiff sought, and was given, discovery regarding "golden handshakes" offered to other employees at the Tarrytown office. Bayer asserts that all of the employees who were offered these severance terms were part of the LTS group. The plaintiff now possess the terms of the LTS group severance offer.

after service of same).

**IT IS SO ORDERED**

**Dated at Hartford, Connecticut this 17th day of July, 2007.**

                                                              /s/ Thomas P. Smith
                                                              **Thomas P. Smith**
                                                              **United States Magistrate Judge**